**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**
_____

Case No. 23-01074 (RAM)
_____

IN RE: LAS MARTAS INC.
*Chapter 12 Debtor*
_____

Condado 5, LLC
*Appellant*

vs.

LAS MARTAS INC.
JOSE R. CARRION-MORALES as Chapter 12 Trustee
*Appellees*

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO
BANKR. CASE NO. 22-02380 (ESL12)
_____

**REPLY BRIEF FOR APPELLANT**
_____

**Ferraiuoli** LLC
American International Plaza
250 Muñoz Rivera Avenue
6th Floor
San Juan, PR 00918
Telephone: (787) 766-7000
Facsimile: (787) 766-7001

-and-

390 N. Orange Avenue
Suite 2300
Orlando, FL 32801
Telephone: (407) 982-7310
Facsimile: (787) 766-7001

**I.     PRELIMINARY STATEMENT**

In its *Appellant Brief*[1] (ECF No. 9), the Appellant explained how the pre-petition *Security Agreement* (**APX 151-163**) ---duly filed with the Puerto Rico Milk Industry Regulatory Office ("ORIL" for its Spanish acronym--- as well as the three (3) separate UCC-1 Financing Statements filed with the Puerto Rico Department of State pursuant to Puerto Rico's Secured Commercial Transactions Act, as amended, 19 L.P.R.A. §§ 2211 *et seq.* (which were duly approved on May 4 and 5, 2021, respectively) afforded a continuing security interest in favor of Appellant over the Debtor's proceeds of its milk production from 58,700 liters of milk quota every 14 days.  Appellant explained that pursuant to the *Security Agreement* (**APX 151-163**), the UCC-1 Financing Statements and applicable law, such continuing security interest extends post-petition to the proceeds arising from the Debtor's milk quotas and the continuing production of milk thereunder.

We respectfully submit that the U.S. Bankruptcy Court for the District of Puerto Rico (the "Bankruptcy Court") erred in concluding that "Condado's perfected pre-petition security agreement over debtor's milk quota is limited to the milk quota, it does not extend to its proceeds or products; Condado' s collateral is limited to the milk quota but does not include proceeds, products, or profits of the milk quota; and, Condado's perfected pre-petition security agreement over debtor's account receivables does not extend to post-petition account receivables as the same became ineffective by the effect of § 552(a)".  *Opinion and Oder*, (**APX 218, lines 4-8**).

The Trustee filed his *Appellee Brief* ("*Trustee's Brief*", ECF No. 15), to which the Debtor piggybacks on by "adopt[ing] and incorporate[ing] the argument[s] made by the Trustee/Appellee" (the "*Debtor's Brief*", ECF No. 20, and together with the *Trustee's Brief*, the "*Appellees' Brief*"). Appellees mischaracterize the law, and Appellant's arguments, choosing instead to focus on two main arguments throughout their briefs: (i) that Appellant's "perfected pre-petition security agreement over debtor's Milk Quota is limited to the Milk Quota [and] does not extend to its proceeds or products" or "to post-petition account receivables and 11 U.S.C. § [552](b)(1) is not

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Appellant Brief* (ECF No. 9), and *Appellees' Briefs* (ECF Nos. 15 and 20).

applicable" (*Trustee's Brief*, ECF No. 15, pp. 9-27); and (ii) that Appellant "forfeited, in the second case, the affirmative defense of claim or issue preclusion when the Debtor and the Chapter 12 Standing Trustee challenged and litigated the post-petition extent of their pre-petition lien over the Milk Quota and account receivables" and Appellant "is [therefore] precluded by the doctrine of Res Judicata – last-in-time judgment rule – from relitigating the issues decided by judgment in the second Chapter 12 case" (id., pp. 28-40).

## II. DISCUSSION OF ARGUMENTS AND APPLICABLE LAW

*(A)   The security interest over the Debtor's milk quotas.*

Appellees argue that that Appellant's "perfected pre-petition security agreement over debtor's Milk Quota is limited to the Milk Quota – it does not extend to its proceeds or products" or "to post-petition account receivables and 11 U.S.C. § [552](b)(1) is not applicable." *Trustee's Brief*, ECF No. 15, pp. 9-27.

However, as discussed in the *Appellant's Brief*, Appellant recorded a UCC-1 Financing Statements affording it a valid lien over:

> **[t]he amount of 58,700 quarts of quota to <u>produce</u> raw milk every 14 days** under license number 3064 issued by the Puerto Rico Dairy Industry to operate in the Municipality of Hatillo.  **The entire taxed quota guarantees the amount of one million sixty thousand two hundred dollars (USD 1,060,200.00) of a loan granted to the Debtor by BPPR for the principal amount of one million eight hundred fifty thousand dollars (USD 1,850,000.00) with the quota being assessed to eighteen dollars with seven cents (USD 18.07) for every quart.**

UCC-1 Financing Statement No. 20210005227 (**APX 181-184**) (boldface and underline added).

Moreover, the UCC also encumbers:

> the **<u>existing accounts receivable</u> related to the processing plant Suiza Dairy, Corp.**, **<u>and those that may be acquired subsequently or in the future by the Debtor due to the payment for the sale of raw milk</u> to the aforementioned processing plant**, in accordance with payment settlement **<u>every 14 days</u>**, the preferred payment will be of USD 7,450.00 fortnightly, over 118 fortnights.

UCC-1 Financing Statement No. 20210005226 (**APX 179**, p. 4, boldface and underline added).

These UCC's were duly signed and executed by the Debtor (through its president, Mr. Juan M. Barreto Ginorio) before Notary Public Francisco J. Arraiza Donate, Affidavits Nos. 28486

and 28489.  See **APX 951-952**.  These liens (currently registered with ORIL *and* the PR Department of State) comply with applicable non-bankruptcy law and thus, with Section 552(b) of the Bankruptcy Code.  In other words, a pre-petition security agreement exists, which —by its express terms— extends to the Debtor's pre-petition property and *subsequent* proceeds, products, offspring, or profits.  Applicable non-bankruptcy laws, namely the Milk Quota Act and the PR UCC, permit these security interests.  See 19 L.P.R.A. § 2234 ("security agreement may create or provide for a security interest in after-acquired collateral"); 19 L.P.R.A. § 2335(a) ("a filed financing statement is effective for a period of five (5) years after the date of filing").

The actual UCC's (all signed and executed by the Debtor before a Notary Public) also clarify and/or supplement and/or modify and/or expand the obligations and scope in the security agreement.  The executed UCC's provide that Appellant holds a first priority pre-petition security interest over the amount of 58,700 quarts of quota to *produce raw milk every 14 days* under license number 3064 issued by the Puerto Rico Dairy Industry and **existing accounts receivable related to the processing plant Suiza Dairy, Corp.**, **and those that may be acquired *subsequently or in the future* by the Debtor due to the payment for the sale of raw milk to the aforementioned processing plant**, in accordance with payment settlement **every 14 days**.  See UCC-1 Financing Statement No. 20210005227 and UCC-1 Financing Statement No. 20210005226 (**APX 176-185**).  Therefore, Section 552(b) of the Bankruptcy Code now governs to encumber the post-petition proceeds arising from the milk quotas.

Without these milk quotas, the Debtor would simply not be able to sell milk to milk processing plants and would not be able to generate steady income.  The Debtor was perfectly aware of the value of these quotas when it borrowed the credit facilities and precisely offered these proceeds (before a Notary Public) as collateral.  See UCC-1 Financing Statement No. 20210005226 and UCC-1 Financing Statement No. 20210005227 (**APX 176-185**).  Without these continuing liens, Appellant's predecessor would not have entered into the credit facilities agreement.  Ruling otherwise tramples creditors' rights in an already weak dairy industry.

Therefore, we submit that the Bankruptcy Court erred in finding that "Condado's perfected pre-petition security agreement over debtor's milk quota is limited to the milk quota, it does not extend to its proceeds or products; Condado' s collateral is limited to the milk quota but does not include proceeds, products, or profits of the milk quota; and that Condado's perfected pre-petition security agreement over debtor's account receivables does not extend to post-petition account receivables as the same became ineffective by the effect of § 552(a)" (**APX216**, lines 12-14).

*(B)   The Stipulations for the Use of Case Collateral in the Debtor's First Bankruptcy Case carry preclusive res judicata effect over all the issues settled therein and all other issues that could have been litigated then.*

Appellees concede that "when the Bankruptcy Court approved [] the five joint stipulations and Chapter 12 plans in the first case, such orders had preclusive effect in later cases, provided all the Res Judicata elements were present in a subsequent case.  Accordingly, any possible preclusive effect of those orders was available to Condado as an affirmative defense in the second case." *Trustee's Brief*, ECF No. 15, p. 33.  However, the Trustee argues that Appellant "failed to raise [the affirmative defense of *res judicata* in the second case], forfeiting the same" under the *last in time* rule.  Id.

Pursuant to the *last in time* rule, "[w]hen two now final and unappealable judgments or orders are in conflict, the one last in time—not the first—is the one entitled to res judicata effect. Courts in the United States do not follow a 'first in time' rule, ... but rather a 'last in time' rule." In re Arroyo, 2020 WL 4728098, at *5, 2020 Bankr. LEXIS 2172, at *13 (Bankr. D.P.R. Aug. 13, 2020 (citing In re Aurora Commer. Corp., 2020 Bankr. LEXIS 17, at *23 (Bankr. S.D.N.Y. Jan. 2, 2020)).  "Where there are two inconsistent judgments and each would be entitled to preclusive effect if it stood alone, the later judgment controls in a third action." In re Aurora Commer. Corp., 2020 Bankr. LEXIS 17, at *23 (quoting In re Gates, 187 B.R. 426, 430 (Bankr. N.D.N.Y. 1995). "This is true even if a court believes that the later decision was wrong." Id.

Appellees argue that:

The *last-in-time* judgment rule is a rule of the *res judicata* doctrine.  Its application must first comply with all the elements of the doctrine: (1) whether or not there is a

-4-

final judgment on the merits; (2) whether or not the identity of the parties in the two suits are the same; **(3) whether or not the identity of the cause of action in both suits are the same**; and (4) whether or not the judgment in the prior case was entered by a Court of competent jurisdiction.

*Trustee's Brief*, ECF No. 15, p. 34 (boldface added).

However, Appellees' contention fails on the third element, *i.e.* identity of the causes of action. In the Second Bankruptcy Case, Appellants could not raise the *res judicata* defense because the facts and circumstances were substantially different than in the First Bankruptcy Case. In the First Bankruptcy Case, Appellant had three (3) separate UCC-1 Financing Statements with the PR Department of State pursuant to Puerto Rico's Secured Commercial Transactions Act, as amended, 19 L.P.R.A. §§ 2211 *et seq.*, and the lien registered with ORIL, just like in the Third Bankruptcy Case subject of the instant appeal.

In the Second Bankruptcy Case, however, Appellant did *not* have a recorded pre-petition security interest via UCC because they had lapsed prior to the petition (and thus the Court did not consider any UCC liens). That is *precisely* why the Trustee and the Debtor challenged the post-petition lien over the milk quota proceeds in the Second Bankruptcy Case, which they did not in the First Bankruptcy Case. Now, in the Third Bankruptcy Case, we are in the *exact same situation we were back in the First Bankruptcy Case*, where both the Debtor and the Trustee consented to Appellant's post-petition lien over the proceeds from the milk quotas via the approved *Stipulations for the Use of Case Collateral*.

Thus, while the issue in the Third Bankruptcy Case may seem similar to the Second Bankruptcy Case, to wit, "whether the milk produced by the cows owned by the [Debtor] and the income they generate are collateral to the lien held by [Appellant]", In re Vaqueria Las Martas, Inc., 617 B.R. 429 (Bankr. D.P.R. 2020*), the facts and circumstances are substantially different*. Contrariwise, the liens and circumstances in the Third Bankruptcy Case are now *exactly* the same as in the First Bankruptcy Case (where the five *Stipulations for the Use of Case Collateral* settling the cash collateral contested matter now at issue were filed). Hence, the *last in time* rule is not applicable in the Third Bankruptcy Case.

Conversely, the *Stipulations for the Use of Case Collateral* in the First Bankruptcy Case constitute *res judicata* in the Third Bankruptcy Case and the Debtor and the Trustee cannot relitigate the same cash collateral issue or bring forth any argument that could have brought at that time the Stipulations were approved in the First Bankruptcy Case. Again, in the Third Bankrutpcy Case we are now in the same factual scenario and circumstances we were back in the First Bankruptcy Case. See Berríos v. Gonzalez-Rosario, 630 F.3d at 12 (*res judicata* "binds parties from litigating or relitigating any claim that was or could have been litigated in a prior adjudication"). The Trustee never objected to any of the *Stipulations for the Use of Case Collateral* arising from the same agreements and security interests as the ones in this case. In fact, he approved them through the favorable recommendations leading to confirmation. Moreover, stipulations in bankruptcy carry *res judicata* authority. See In re Preserba Compañía De Desarrollos, Inc., 635 B.R. 185, 197 (B.A.P. 1st Cir. 2022) (stipulations in bankruptcy are "binding and enforceable, and ha[ve] the same authority of *res judicata*; the parties must consider the points discussed to be definitely resolved and cannot go over them again"); In re Frau, 2014 Bankr. LEXIS 1631, at **21-22, 2014 WL 1464842, at *8 (same).

*(C)   The Debtor and the Trustee are judicially estopped from making any argument against the clear terms of the Stipulations filed in the First Bankruptcy Case.*

Appellees fail to address in their *Briefs* the fact that they are judicially estopped from making any argument against the *Stipulations for the Use of Case Collateral* filed in the First Bankruptcy Case.

Both Debtor and the Trustee obtained a favorable result through these *Stipulations for the Use of Case Collateral* in the First Bankruptcy Case: the Debtor obtained the confirmation of its plan and post-confirmation modification and the Trustee prevailed on his recommendations. They both encouraged, participated and prevailed in their respective positions using these *Stipulations* as support. This glaring omission speaks volumes.

We therefore respectfully submit that the Bankruptcy Court erred and/or abused its discretion in not enforcing the *Stipulations for the Use of Case Collateral* and/or holding the

Trustee and the Debtor judicially estopped from attacking and/or contesting the preclusive effect of those *Stipulations for the Use of Case Collateral* in the Third Bankruptcy Case subject of this appeal.

### III.     CONCLUSION AND RELIEF SOUGHT

For the forgoing reasons, Appellant respectfully moves this District Court to **REVERSE** the Bankruptcy Court's *Opinion and Order*; **REVERSE** the Bankruptcy Court's holding that Appellant's lien over the Debtors' milk quota does not extend or attach to the milk produced and sold to milk processing plants under Appellant's bi-weekly milk quota; **REVERSE** the Bankruptcy Court's holding that the proceeds generated therefrom are not subject to Appellant's collateral; **REVERSE** the Bankruptcy Court's determination that the *Stipulations for the Use of Case Collateral* in the First Bankruptcy Case do not constitute res judicata; **REVERSE** the Bankruptcy Court's holding that the Debtor and the Trustee are not judicially estopped from raising any argument against the *Stipulations;* and grant any other relief it deems just and proper.

RESPECTFULLY SUBMITTED.
Dated: August 24, 2023.

**Ferraiuoli** LLC
American International Plaza
250 Muñoz Rivera Avenue
6th Floor
San Juan, PR 00918
Telephone: (787) 766-7000
Facsimile:   (787) 766-7001

  */s/ Sonia E. Colón*
SONIA E. COLÓN
USDC-PR No. 213809
scolon@ferraiuoli.com

  */s/Gustavo A. Chico-Barris*
GUSTAVO A. CHICO-BARRIS
USDC-PR No. 224205
gchico@ferraiuoli.com

  */s/Tomás F. Blanco-Pérez*
TOMAS F. BLANCO-PEREZ
USDC-PR No. 304910
tblanco@ferraiuoli.com

*Attorneys for Appellant*
*Condado 5, LLC*

## CERTIFICATE OF COMPLIANCE WITH RULE 8015(a)(7)(B)

This brief complies with the type-volume limitation of Fed. R. Bank. P. 8015(a)(7)(B), because it contains 2,723 words, excluding the parts of the brief exempted by Fed. R. Bank. P. 8015(g), as counted using the word count of the word-processing system used to prepare this brief.

Date:        August 24, 2023

Signature:   */s/Gustavo A. Chico-Barris*
             Gustavo A. Chico-Barris

-1-

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing Appellant Reply Brief to be served on counsel for Appellees using the Next Gen CM/ECF system, which will send notification of such filing to all Next Gen CM/ECF participants in this case on this 24th day of August 2023.

Signature:  */s/Gustavo A. Chico-Barris*
                Gustavo A. Chico-Barris