**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

_____

Case No. 23-01074 (RAM)

_____

IN RE: LAS MARTAS INC.
_Chapter 12 Debtor_

_____

Condado 5, LLC
_Appellant_

vs.

LAS MARTAS INC.
JOSE R. CARRION-MORALES as Chapter 12 Trustee
_Appellees_

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO
BANKR. CASE NO. 22-02380 (ESL12)

_____

**URGENT MOTION IN AID OF JURISDICTION AND/OR FOR STAY PENDING APPEAL**

_____

COMES NOW Appellant Condado 5, LLC ("Condado") through its undersigned counsel, and respectfully states and prays as follows:

Relevant Procedural Background

The instant Appeal has been fully briefed. See _Appellant's Brief_ (ECF No. 9), _Appellee's Brief_ (ECF No. 20), and Appellant's _Reply Brief_ (ECF No. 20). While it was stayed for a period of time because the underlying bankruptcy case had been dismissed (ECF Nos. 24 and 25), the stay was subsequently lifted on April 25, 2025 (ECF No. 31). To avoid repetition, we hereby incorporate by reference our _Appellant Brief_ (ECF No. 9) and _Reply Brief_ (ECF No. 20) as if fully transcribed herein.

For the sake of context, since the filing of the instant Appeal on February 15, 2023 (the "Appeal"), on September 29, 2023, the Bankruptcy Court entered an _Opinion and Order_

dismissing the Debtor's Third Bankruptcy Case (Bankr. Case No. 22-02380-ESL, ECF No. 148), which the Debtor appealed to the US Bankruptcy Appellate Panel for the First Circuit (the "BAP") on 11/9/23 (Bankr. Case No. 22-02380-ESL, ECF No. 168).

On September 29, 2023, Condado filed a *Motion to Withdraw Consigned Funds* (Bankr. Case No. 22-02380-ESL, ECF No. 149), to which the Debtor filed a *Response to Motion to Withdraw Consigned Funds and Cross Motion to Disburse Funds to Debtor* on October 13, 2023 (the "*Opposition to Motion to Withdraw Consigned Funds*", Bankr. Case No. 22-02380-ESL, ECF No. 154). On November 6, 2023, Condado filed a *Reply to Opposition to Motion to Withdraw Consigned Funds* (Bankr. Case No. 22-02380-ESL, ECF No. 167).

On April 5, 2024, the Bankruptcy Court entered an *Order* "declin[ing] to exercise jurisdiction over the pending matters until the same are decided by the appellate courts" (Bankr. Case No. 22-02380-ESL, ECF No. 188).

On March 5, 2025, the BAP entered an *Opinion and Order* (Bankr. Case No. 22-02380-ESL, ECF No. 190) reversing the *Opinion and Order Dismissing Case* "[b]ecause § 1208(c)(9) is phrased in the conjunctive and the court's order expressly granted Condado's motion to dismiss based on that provision, we conclude here. Our determination of this narrow issue does not reach the court's assessment of the second prong of § 1208(c)(9) or any other basis for dismissal." Las Martas, Inc. v. Condado 5, LLC, 667 B.R. 60 (B.A.P. 1st Cir. 2025).

On June 9, 2025, the Bankruptcy Court held a Status Conference wherein the Court ordered as follows:

> 1. Condado shall immediately cease collecting the Debtor's proceeds from the sale of milk.
> 2. Condado shall submit to the Debtor and the Trustee a detail of all funds received from milk proceeds of the Debtor since the filing of the petition within thirty (30) days.
> 3. The Debtor shall file a summary of its monthly operations since the dismissal of the case through May 2025 within thirty (30) days. Monthly reports of operations shall be filed thereafter in the ordinary course.
> 4. The Debtor and Condado shall file a Joint Report on the distribution of the consigned funds within thirty (30) days.
> 5. The Debtor shall file an amended Chapter 12 plan within ninety (90) days from the filing of the Joint Report.

*Minutes of Proceeding*, Bankr. Case No. 22-02380-ESL, ECF No. 196, pp. 2-3.

On June 11, 2025, given the pendency of Condado's Appeal, Condado filed a *Motion for Entry of Order to Stay Any Pending Matter Currently on Appeal Under the Divestiture Rule* (the "*Motion to Stay*", Bankr. Case No. 22-02380-ESL, ECF No. 197) because any adjudication or distribution of the consigned funds would directly interfere with the jurisdiction of the Appellate Court (i.e., this Court) by effectively deciding matters on the very issue on appeal.

On June 24, 2025, Vaquería Tres Monjitas, Inc.'s counsel ("Tres Monjitas" or "VTM") filed a *Notice of Appearance* wherein he informed that he "immediately contacted Vaquería Tres Monjitas, Inc., […] to implement the Order of this Honorable Court *by no[t] issuing nor delivering any check from the proceeds of the purchase of raw milk to Condado 5 LLC*" (Bankr. Case No. 22-02380-ESL, ECF No. 201) (italics added).

Because this instruction struck at the very subject matter of Condado's *Motion to Stay* and the instant *Appeal* and, if carried out would adversely interfere with Condado's appellate rights, on June 24, 2025, Condado filed an *Urgent Motion Staying Any Redirection, Withholding or Distribution of Milk Sale Proceeds During the Pendency of Condado's Appeal and for Consignment of Proceeds Pending Resolution of the Appeal* (the "Urgent Motion", Bankr. Case No. 22-02380-ESL, ECF No. 202).

On July 2, 2025, Condado filed a *Motion for Relief from Stay* (Bankr. Case No. 22-02380-ESL, ECF No. 211), to which the Debtor opposed on July 16, 2025 (the Bankr. Case No. 22-02380-ESL, ECF No. 224).  On July 22, 2025, the Bankruptcy Court held a hearing to consider the *Motion for Relief from Stay* wherein it ordered Condado to "file with the court 'a detail of all funds received from milk proceeds of the Debtor since the filing of the petition within' fourteen (14) days" and also ordered Condado and the Debtor to "'file a Joint Report on the distribution of the consigned funds within' fourteen (14) days."  *Minutes of Proceeding*, Bankr. Case No. 22-02380-ESL, ECF No. 233, p. 3.

On August 1, 2025, the Bankruptcy Court entered an *Opinion and Order* denying Condado's *Motion to Stay* and the *Urgent Motion* (Bankr. Case No. 22-02380-ESL, ECF No. 248). See In re Las Martas, 2025 Bankr. LEXIS 1848, 2025 WL 2200547 (Bankr. D.P.R. Aug. 1, 2025).

Last Friday (August 8, 2025), Tres Monjitas informed that it "will make future payments for the purchase of the above captioned debtor", as opposed to consigning those funds with the Court, "pursuant to the Opinion and Order of this Honorable Court of August 8, 2025, Dkt No 248". *Motion to Inform Future Payments to Debtor*, Bankr. Case No. 22-02380-ESL, ECF No. 254.

Because any adjudication or distribution of the consigned funds directly interferes with the jurisdiction of this Court by effectively deciding matters on the very issue on appeal, Condado moves for an urgent order in aid of jurisdiction staying the distribution of the funds and/or any matter predicated and/or related to the issues on subject of the instant Appeal.

<u>Legal Argument</u>

(A)    *Request for relief in aid of jurisdiction.*

Federal courts have the power under the All Writs Act, to issue any order "necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651.  Here, an injunction or stay of distribution is necessary to aid this Court's jurisdiction by preventing interference with the Appeal.  Employing that power to uphold jurisdiction and prevent mootness is not only appropriate but essential in this case under the "divestiture rule".

The "divestiture rule" serves to protect the appellate court's jurisdiction and avoid the confusion of two courts addressing the same issue simultaneously.  <u>See</u> <u>Mission Prod. Holdings, Inc. v. Schleicher & Stebbins Hotels, L.L.C. (In re Old Cold, LLC)</u>, 602 B.R. 798, 822 (B.A.P. 1st Cir. 2019) <u>aff'd</u> 976 F.3d 107, 116–17 (1st Cir. 2020) (the filing of an appeal "divests the lower court of jurisdiction over those matters on appeal").

As stated by the U.S. Supreme Court, "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the [lower] court of its control over those aspects of the case involved in the appeal."  <u>Griggs v. Provident Consumer Disc. Co.</u>, 459 U.S. 56, 58 (1982); <u>also see</u> <u>Colón-Torres v. Negrón-Fernández</u>, 997 F.3d 63, 74 (1st Cir. 2021) ("the filing of a notice of appeal is an event of jurisdictional significance -- it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal").

The "divestiture rule" is designed to promote judicial economy and prevent the confusion that would result from two courts addressing the same issue simultaneously.  See 20 James Wm. Moore, Moore's Federal Practice: Civil ¶ 303.32[1] (3d ed. 2009); Neary v. Padilla (In re Padilla), 222 F.3d 1184, 1190 (9th Cir. 2000).  It also applies to an appeal from a bankruptcy court order. See In re G-I Holdings, Inc., 568 B.R. 731, 763 (Bankr. D.N.J. 2017); In re Whispering Pines, 369 B.R. 752, 759 (B.A.P. 1st Cir. 2007) (holding that the bankruptcy court lacked jurisdiction to enter an order affecting the subject of a pending appeal).

A Bankruptcy Court may not adjudicate or enforce an order in a way that modifies the matters on appeal or impairs the appellate court's ability to grant effective relief. If an action by the Bankruptcy Court would entrench or distribute rights that are under appellate review, the divestiture rule prohibits it.  See Bialac v. Harsh Inv. Co. (In re Bialac), 694 F.2d 625 (9th Cir. 1982); Hyman v. Iowa State Bank (In re Health Care Prods.), 169 B.R. 753, 755 (M.D. Fla. 1994) (filing notice of appeal from appealable order divests lower court of jurisdiction over issues related to the appeal; bankruptcy court lacked jurisdiction to strike affidavit following grant of summary judgment on turnover complaint and opponent's filing of notice of appeal); In re Neuman, 67 B.R. 99 (S.D.N.Y. 1986) (no jurisdiction to modify appealed order); In re Maurice, 179 B.R. 881 (Bankr. N.D. Ill.) (bankruptcy court lacks authority to provide guidance or modify order pending appeal), aff'd 69 F.3d 830 (7th Cir. 1995); In re Commodore Corp., 87 B.R. 62 (Bankr. N.D. Ind. 1987) (no jurisdiction to "do anything that impacts on any issues or matters on appeal"). The proper course in such circumstances is to maintain the status quo until the appellate tribunal has resolved the issue.

"[O]nce an appeal is pending, *it is imperative that a lower court not exercise jurisdiction over those issues which, although not themselves expressly on appeal, nevertheless so impact the appeal so as to interfere with or effectively circumvent the appeal process.*" Id. (italics added), citing In re Old Cold, LLC, 602 at 822.

In In re Betteroads Asphalt, LLC, 610 B.R. 28 (Bankr. D.P.R. 2019), the Bankruptcy Court summarized the *divestiture rule* as follows:

The divestiture rule is applicable to an appeal from a bankruptcy court order. <u>In re G-I Holdings, Inc.</u>, 568 B.R. 731, 763 (Bankr. D.N.J. 2017) (citation omitted); <u>see also</u> <u>In re Whispering Pines</u>, 369 B.R. at 759 (concluding that bankruptcy court did not have jurisdiction to enter order granting relief from stay while appeal of order confirming plan, which provided for the sale of the subject property, was pending). 'once an appeal is pending, it is imperative that a lower court not exercise jurisdiction over those issues which, although not themselves expressly on appeal, nevertheless so impact the appeal so as to interfere with or effectively circumvent the appeal process.'" <u>In re G-I Holdings, Inc.</u>, 568 B.R. at 763 (quoting <u>In re Whispering Pines</u>, 369 B.R. at 759). Thus, the test for determining if a pending appeal divests a lower court of jurisdiction is **whether the subject matter presented in the appeal is so "closely related" to the issues raised in the motion that the entry of the order "impermissibly interfere[s]" with the appellant's rights in its appeal.** <u>In re Whispering Pines</u>, 369 B.R. at 759.

<u>Id.</u> at 35 (boldface added).

**Importantly, the Bankruptcy Court had previously applied the "divestiture rule" against this same Debtor's requests in the Second Bankruptcy Case**. On that occasion, the Court "denied the [Debtor's] motion [at Dkt. 210] in open court concluding that the equity powers of section 105 of the Bankruptcy Code *cannot override the divestiture rule as the issue on appeal is closely related to the debtor's request that the court enforces its decision irrespective of the appeal as the motion for stay pending appeal was denied*". <u>In re Vaquería Las Martas, Inc.</u>, *Minutes of Hearing Denying Confirmation Held on 1/26/21*, Bankr. Case No. 18-07304, ECF No. 211, p. 2 (italics added). Coincidentally, the issues on appeal there (which triggered the application of the "divestiture rule") were the same issues on in Condado's current Appeal here (to wit, whether Condado has a post-petition lien over the Debtor's milk proceeds). We move for the same application of the divestiture rule on this occasion.

The distribution of the consigned milk proceeds, and whether Condado has a lien thereover, is precisely the subject of Condado's instant Appeal. This Appeal squarely challenges the Bankruptcy Court's determination that Condado's lien does not extend to the Debtor's milk proceeds, and thus effectively contests who is entitled to the consigned funds. Because that issue lies now with the jurisdiction of this Court, the Bankruptcy Court is divested of jurisdiction to alter the disposition of any related issue during the instant Appeal's pendency.

Any order by the Bankruptcy Court releasing the consigned funds or deciding how they should be distributed would usurp the role of this Court and could render the Appeal futile. Here,

the question of entitlement to the milk proceeds is precisely such a matter.

Allowing distribution of the funds to the Debtor now would "interfere with or effectively circumvent the appeal process." <u>Whispering Pines</u>, 369 B.R. at 759. For instance, if the Bankruptcy Court were to disburse these consigned monies to the Debtor, this Court's potential ability to award those funds to Condado (should Condado prevail in the instant Appeal) would be undermined or lost.

This Court's jurisdiction to decide the issue would be impermissibly encroached upon by a premature distribution, and any decision in Condado's favor could be rendered hollow if the funds have already been paid out and spent. Distributing the contested funds to the Debtor (or anyone) would go beyond mere maintenance of the *status quo* and would in fact resolve the contested issue in advance of appellate review. Such action is inconsistent with the jurisdictional limitations imposed by the instant Appeal. This is the very scenario the "divestiture rule" guards against.

The requested stay is narrowly tailored to the matters involved in the instant appeal (the consigned funds). This is not a request to halt the entire bankruptcy case or other unrelated proceedings; it targets only those actions that would effectively allocate the disputed funds or assume an outcome on the pending appeal.

(B)    *In the alternative, all four factors weigh in favor of granting the requested stay pending appeal.*

Courts in our First Circuit apply the classic four-part standard applicable a stay pending appeal under Fed. R. Bankr. P. 8007. <u>See</u> <u>Acevedo-Garcia v. Vera–Monroig</u>, 296 F.3d 13, 16 (1st Cir. 2002). Hence, courts consider: "(1) whether the applicant has made a strong showing of success on the merits; (2) whether the applicant will be irreparably harmed absent injunctive relief; (3) whether issuance of the stay will injure other parties; and (4) where the public interest lies." <u>Id.</u> at 16, n. 3.

"The *sine qua non* [of the stay pending appeal standard] is whether the [movants] are likely to succeed on the merits." <u>Elias v. Sumski (In re Elias)</u>, 182 Fed. Appx. 3, 4 (1st Cir. 2006, citing <u>Weaver v. Henderson</u>, 984 F.2d 11, 12 (1st Cir. 1993). However, the degree of likelihood of

success is not ultimately determinative and must be balanced with the hardships caused to the parties if the injunction is not granted.  **If a party's showing of probable success on the merits is uncertain, he may be entitled to a preliminary injunction if he demonstrates a strong probability that he will be injured if the court fails to act**.  11A Wright, Miller & Kane, <u>Federal Practice and Procedure Civ.</u> § 2948.3 (3rd ed. 2020), citing <u>Williams v. San Francisco Unified School Dist.</u>, 340 F. Supp. 438 (N.D. Cal. 1972).

Thus, rather than requiring the moving party to establish that the trial court is likely to be reversed, "the movant must only establish that the appeal raises *serious and difficult questions of law in an area where the law is somewhat unclear*." <u>Canterbury Liquors & Pantry v. Sullivan</u>, 999 F. Supp. 144, 150 (D. Mass. 1998). <u>Also see</u> <u>Exxon Corp. v. Esso Worker's Union, Inc.</u>, 963 F.Supp. 58, 60 (D. Mass. 1997).  This Appeal is exactly that kind of situation.

To establish irreparable harm, the movant does not need to show that the injunctive relief will be fatal to the business, only that its legal remedies are inadequate.  <u>See</u> <u>Ross-Simons of Warwick, Inc. v. Baccarat, Inc.</u>, 102 F.3d 12, 15 (1st Cir. 1996).  "If the plaintiff suffers a substantial injury that is not accurately measurable or adequately compensable by money damages, irreparable harm is a natural sequel." <u>In re Redondo Const. Corp.</u>, No. 02-02887 (ESL), 2010 WL 1286849, at *1 (Bankr. D.P.R. Mar. 30, 2010)

Therefore, "[w]hen implementing this test, the four factors are weighed according to the unique circumstances of each case to ensure a just result." <u>Betteroads Asphalt, LLC v. FirstBank Puerto Rico</u>, 2020 WL 3125274, at *5 (D.P.R. 2020).

"'What matters ... is not the raw amount of irreparable harm [a] party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits" <u>Id.</u> at 6 (citing <u>P.R. Hosp. Supply, Inc. v. Boston Scientific Corp.</u>, 426 F.3d 503, 507 n. 1 (1st Cir. 2005)).

Here, the central issue in this Appeal is whether Condado's prepetition lien extends to the Debtor's post-petition milk proceeds (the funds that have been consigned to the Bankruptcy Court).  *This question is novel and substantial, ergo unsettled*.  Indeed, it has been the subject of

ongoing litigation across multiple proceedings involving this Debtor. Notably, in the Debtor's prior bankruptcy case, the Bankruptcy Court itself recognized the seriousness of this issue: when the Debtor attempted to use the consigned funds while an earlier appeal was pending, the court invoked the divestiture rule and refused to grant that relief. The Bankruptcy Court acknowledged that the lien question should be decided by the appellate court. This history underscores that Condado's position on appeal is at least a credible one, grounded in a legitimate legal dispute.

Absent a stay, Condado will suffer irreparable harm because the very subject of the appeal (the disputed milk proceeds) will likely be distributed and potentially dissipated, nullifying any victory Condado could achieve on appeal. If the consigned funds are released to the Debtor now (or redirected to any party other than being held in escrow), they will vanish in the ordinary course of the Debtor's operations, making them impossible to recoup later. Thus, even if Condado ultimately prevails in proving its lien encumbers those funds, there would be no practical way to recover them after they have been spent. Courts recognize that such a scenario, where an appeal might be rendered moot by the transfer or expenditure of the disputed asset, constitutes a quintessential irreparable harm.

The risk here is concrete and imminent. The Debtor's milk proceeds have been held in consignment precisely because their ownership is in dispute. The Bankruptcy Court's recent actions (ordering cessation of payments to Condado and indicating the funds may be turned over to the Debtor) raise the specter that the Debtor will obtain and use these monies before the appeal is resolved. If that happens, Condado's collateral will effectively be lost. Monetary relief after the fact would be inadequate because the issue is who has a right to these very funds, not merely a question of money damages in the abstract. Moreover, even if theoretically Condado could pursue the Debtor to recover the money later, there is no assurance the Debtor would still have it or be able to repay it, especially given that these are operating funds (from milk sales) likely used for ongoing expenses. This irretrievable loss of an important property right and appellate remedy is exactly the type of harm that cannot be undone and thus warrants injunctive relief now.

The balance of equities tips decidedly in favor of maintaining the status quo. Granting a

stay will not substantially harm the Debtor or other parties, it will merely continue the current arrangement in which the milk sale proceeds are held (consigned) pending the outcome of litigation. These funds were never part of the Debtor's usable cash during the appeal; they have been segregated in order to protect both sides' claims. Requiring that they remain consigned or otherwise undistributed for a while longer does not impose any new burden on the Debtor. At most, the Debtor faces a delay in accessing funds that it *might* ultimately receive if it prevails on the lien issue. But a short delay in receiving money is not the kind of injury that outweighs the permanent loss Condado would suffer if the stay is denied. There is no indication that preserving the status quo will threaten the Debtor's ability to continue operating or reorganize, the Debtor has managed to operate despite the funds being held in reserve. In contrast, denying the stay and allowing the Debtor immediate use of the consigned funds poses a far greater risk of harm: it could permanently deprive Condado of its collateral and render any appellate success hollow. Thus, the equitable scales tilt in Condado's favor.

The requested relief is narrowly tailored so that it only affects the disputed milk proceeds (the subject of the appeal) and not the Debtor's operations in general. No other creditors or third parties will be adversely affected by simply freezing the dispute funds in place until the Court decides the appeal. On the other hand, all parties benefit from clarity and finality that will come with a definitive appellate ruling on the lien issue, which a stay will facilitate by preserving the thing in controversy.

Moreover, the public interest strongly supports granting the stay to preserve the integrity of the appellate process. It is a fundamental principle that once a notice of appeal is filed, the lower court is divested of jurisdiction over those aspects of the case that are under appeal.

Accordingly, all four factors weigh in favor of granting the requested stay pending appeal. Condado's appeal presents serious legal questions and a reasonable prospect of success. Without a stay, Condado faces irreparable harm through the potential loss of its collateral and an empty victory on appeal. Granting a stay will not significantly harm the Debtor or other parties, as it merely preserves the current state of affairs, whereas denying a stay risks severe prejudice to

Condado. Lastly, the public interest, in upholding the rule of law, respecting the jurisdiction of appellate courts, and ensuring appeals are not rendered futile, strongly supports maintaining the status quo.

Conclusion

For all these reasons, the Court should exercise its authority to preserve its appellate jurisdiction and issue a stay preventing any distribution of the consigned milk proceeds until this Appeal is ultimately resolved on the merits.  This will safeguard the Court's ability to render effective relief and ensure that justice is done in accordance with the appellate outcome.

Prayer for Relief

WHEREFORE, Condado respectfully moves this Court to urgently stay the distribution of the Consigned Funds and/or any matter predicated and/or related to the issues on Condado's liens on Appeal while it is pending, order the Debtor to consign any it receives from Tres Monjitas with the Bankruptcy Court pending the resolution of this Appeal and grant any further equitable relief.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 11th day of August 2025.

**Ferraiuoli** LLC
Attorneys for Condado
American International Plaza
250 Muñoz Rivera Ave.
6th Floor
San Juan, PR 00918
PO Box 195168
San Juan, PR 00919-5168
Telephone: 787.766.7000
Facsimile: 787.766.7001

*/s/Gustavo A. Chico-Barris*
GUSTAVO A. CHICO-BARRIS
USDC-PR No. 224205
gchico@ferraiuoli.com

*/s/Tomás F. Blanco-Pérez*
TOMAS F. BLANCO-PEREZ
USDC-PR No. 304910
tblanco@ferraiuoli.com